USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/5/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ROSANNE DIPIZIO and DREAMCO :
DEVELOPMENT CORPORATION, :
  :
                              Plaintiffs, :    1:15-cv-5339-GHW
  :
                   -v - :    MEMORANDUM OPINION AND
  :                ORDER
EMPIRE STATE DEVELOPMENT :
CORPORATION, ERIE CANAL HARBOR :
DEVELOPMENT CORPORATION, THOMAS :
DEE, SAM HOYT, MARIA LEHMAN, THE :
LIRO GROUP, PHILLIPS LYTLE, LLP, :
TRAVELERS CASUALTY AND SURETY :
COMPANY OF AMERICA, MARK E. SMITH, :
and WILLIAM J. BRENNAN, ESQ. :
  :
                            Defendants. :
-----------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

## I. INTRODUCTION

Plaintiffs allege a broad conspiracy of public corruption, "orchestrated by high-level public officials of New York State," one designed to divert blame for delays and mismanagement of a large construction project in Buffalo by various defendants to the general contractor in charge of the project. The complaint discusses at length the "backrooms of Erie County's notorious culture of political insider dealing" through which the conspiracy operated—including spiteful emails targeted at political outsiders, insinuations of campaign contributions and fundraisers being exchanged for political favors, and leaks of false news stories to local newspapers. But what the complaint packs in salacious allegations, it lacks in meaningful connections to the Southern District of New York.

Defendants' motion to transfer venue to the Western District of New York is accordingly GRANTED.

## II.   BACKGROUND[1]

Plaintiffs in this case are Dreamco Development Corporation ("Dreamco") and its principal, Rosanne DiPizio.  Dreamco provides consulting services and supplies construction materials to DiPizio Construction Company, Inc. ("DiPizio Construction"), a construction company operated by Ms. DiPizio's father.  Am. Compl. at ¶¶ 12, 38.  Defendant Erie Canal Harbor Development Corporation ("Erie Canal"), is a subsidiary of defendant Empire State Development Corporation ("Empire State"), a New York public benefit corporation.  *Id.* at ¶¶ 13-16.  Erie Canal is governed by a nine-member board, and was created with the goal of restoring economic growth in the area by revitalizing Buffalo's Inner and Outer Harbors.  *See id.*

In November 2011, Erie Canal solicited bids for the services of a general contractor in connection with the Inner Harbor Project (the "Project"), a high-profile construction project in downtown Buffalo.  *Id.* at ¶ 29.  The bid solicitation called for the construction of "Historically Aligned Canals, Towpaths, and Bridges" on the site of the former Memorial Auditorium, which would allow for seasonal ice skating.  *See Id.*; Dkt. No. 23-1, Bench Decision in *DiPizio Construction Co. v. Erie Canal Harbor Development Corp.*, No. 2013-602666 (Sup. Ct. Erie Cnty. July 12, 2013) at 1.  After receiving the plans and specifications called for in the solicitation, DiPizio Construction submitted a bid on December 22, 2011.  Am. Compl. at ¶ 44.  DiPizio Construction's bid was the lowest submitted, and it was selected as general contractor.  *Id.* at ¶¶ 30, 44, 55.  Shortly thereafter, it hired Dreamco as a subcontractor to supply construction material for the Project.  A performance

---

[1] Unless otherwise noted, the facts are taken from the amended complaint, and are accepted as true for the purposes of this motion.  *See Cerussi v. Union Coll.*, 144 F. Supp. 2d 265, 266 (S.D.N.Y. 2001) (accepting as true facts alleged by plaintiff or otherwise undisputed in deciding motion to transfer).  Moreover, "[i]n deciding a motion to transfer, a court may consider material outside of the pleadings."  *Mohsen v. Morgan Stanley & Co. Inc.*, No. 11 CIV. 6751 PGG, 2013 WL 5312525, at *3 (S.D.N.Y. Sept. 23, 2013) (collecting cases).

2

and payment bond was issued by DiPizio Construction's surety, defendant Travelers Casualty and Surety Company of America ("Travelers"), guaranteeing completion of the Project. *Id.* at ¶ 58.

No sooner was DiPizio Construction's bid accepted than a plot was hatched by Erie Canal's president, defendant Thomas Dee, to replace DiPizio Construction as general contractor. Mr. Dee made overly-optimistic public statements that construction on the project would be completed by the end of 2012. *Id.* at ¶ 59. When it soon became clear that this timetable was unworkable—due to a lack of funding, design changes, and errors caused by Erie Canal's design team—Mr. Dee and certain other defendants sought to deflect blame by using DiPizio Construction as a scapegoat for the delays. *Id.* at ¶¶ 31–32, 42, 61. DiPizio Construction was targeted due to a personal dislike of Ms. DiPizio; Mr. Dee was said have "wanted to put a sword through her heart." *Id.* at ¶ 279. He and others thus sought to have DiPizio Construction replaced with Pike Company, a "politically connected contractor" who was the second-highest bidder on the Project. *Id.* at ¶¶ at 1, 32, 65, 258. Mr. Dee's primary cohorts in the alleged scheme were defendants Sam Hoyt, the regional president of Empire State, and Mark Smith, Erie Canal's construction project manager.

The complaint alleges that Messrs. Dee, Hoyt, and Smith, among other defendants, went to great lengths to sabotage their own project—deliberately trying to drive up costs and impede progress on the construction—in the hopes of pinning the blame on DiPizio Construction. For example, Messrs. Dee and Smith directed defendant The LiRo Group ("LiRo"), Erie Canal's construction manager, to routinely deny DiPizio Construction's proposed work plans and refuse to grant otherwise justified change orders. *Id.* at ¶ 91. Mr. Smith and LiRo interfered with DiPizio Construction's plans for soil excavation and disposal, adding further cost and delays. *Id.* at ¶ 67–72. Erie Canal issued several design changes, each adding months to the project's completion date. *Id.* at ¶¶ 96–99. Messrs. Dee and Smith directed Erie to withhold payments DiPizio Construction was otherwise due. *Id.* at ¶¶ 92, 112. Thus, despite the significant cost overruns and delays that DiPizio

Construction encountered, plaintiffs allege these were solely the result of defendants' mismanagement and deliberate interference.

While frustrating DiPizio Construction's progress on the Project, the alleged conspirators simultaneously sought to convince others that DiPizio Construction needed to be replaced as general contractor.  For example, Messrs. Dee, Smith, and others sent numerous emails deriding DiPizio Construction's performance to Erie Canal Board members and others.  *Id.* at ¶¶ 76–83, 85, 103–05, 107–11.  Mr. Dee and others also publicly blasted Ms. DiPizio and DiPizio Construction in the local media, leaking false stories that placed all blame for delays squarely on them.  *Id.* at ¶¶ 241–243, 269.  Messrs. Dee and Smith also had several reports and memoranda prepared, each blaming DiPizio Construction for the project's delays and mismanagement while ignoring the actual causes for those failures.  These included two reports issued by LiRo, a memorandum prepared by defendant Phillips Lytle, LLP, and an opinion from civil engineer and defendant Maria Lehman.  *Id.* at ¶¶ 116–124; 128–130; 131–147.

After laying the necessary groundwork, Mr. Dee and his alleged co-conspirators set out to terminate DiPizio Construction as general contractor for the Project.  First, Mr. Hoyt emailed Kenneth Adams, Empire State's President, informing him of Erie Canal's intention to serve DiPizio Construction with a notice of termination.  *Id.* at ¶ 207.  Mr. Hoyt then provided Mr. Adams with the reports and memoranda recommending that DiPizio Construction be terminated.  *Id.*  Relying on these documents and misrepresentations made by Mr. Dee and others, and without any knowledge of the actual causes for the delays, Mr. Adams decided that DiPizio Construction should be terminated "for cause."  *Id.* at ¶¶ 207–210.  Mr. Dee then recommended that DiPizio Construction be terminated to the Erie Canal Board.  *Id.* at ¶¶ 211–213.  Despite no formal vote by the Board authorizing the action, Mr. Dee had a Notice of Intention to Terminate issued to DiPizio Construction on May 13, 2013.  *Id.* at ¶¶ 214–15.  Mr. Dee, acting on behalf of Erie Canal but again without a formal vote of the Board, terminated DiPizio Construction for cause on July 22, 2013.  *Id.*

4

at ¶¶ at 251–52. Because it was no longer general contractor of the Project, DiPizio Construction subsequently terminated its contract with Dreamco. *Id.* at ¶ 260.

With DiPizio Construction removed as general contractor, Erie Canal made a claim on the performance bond for Travelers, DiPizio Construction's surety, to complete the project. *Id.* at ¶¶ 251, 259. Travelers accepted the claim on the bond and formally agreed to take over the Project on September 23, 2013. *Id.* at ¶¶ 233–35, 244, 275, 283–84. A re-bid was then held to select a contractor to complete the project. Although DiPizio Construction sought to bid and have Travelers issue it new bonds, it was not allowed to participate. *Id.* at ¶¶ 273, 286, 322. Instead, Travelers appointed Pike as completion contractor for the project, despite it being the highest of the completion contractor bids submitted. *Id.* at ¶¶ 286–287.

After DiPizio Construction's termination, a barrage of litigation ensued. DiPizio Construction filed five separate state court actions in Erie County: (1) A suit against Erie Canal, seeking a preliminary injunction from termination and damages for breach of contract. *Id.* at ¶ 236; Dkt. No. 23-5, Complaint in *DiPizio Construction Co. v. Erie Canal Harbor Development Corp.*, No. 2013-602666 (Sup. Ct. Erie Cnty. May 13, 2013). The trial court denied the preliminary injunction and granted partial summary judgment in DiPizio Construction's favor, but the latter decision was subsequently reversed by the Appellate Division. *Id.* at ¶¶ at 280, 282, 303. After Travelers successfully intervened as plaintiff, it was declared to be the real party-in-interest and DiPizio Construction was dismissed for lack of standing. *Id.* at ¶¶ at 306, 309, 318. (2) A suit against Empire State, Erie Canal, and Messrs. Hoyt, Dee, and Smith for defamation and tortious interference with contract in connection with the Project. *Id.* ¶ at 274; Dkt. No. 23-11, Complaint in *DiPizio Construction Co. v. Empire State Development, et al.*, No. 2013-801815 (Sup. Ct. Erie Cnty. September 13, 2013). (3) A suit against Erie Canal, seeking a declaratory judgment that DiPizio Construction's termination was a "nullity" because Mr. Dee acted without requisite Board approval. Dkt. No. 23-12, Complaint in *DiPizio Construction Co. v. Erie Canal Harbor Development Corp.*, No.

5

2013-2612 (Sup. Ct. Erie Cnty. September 13, 2013). (4) A suit against Erie Canal seeking a declaratory judgment that the conditions precedent for DiPizio Construction's performance bond had not been triggered. *Id.* at ¶ 290; Dkt. No. 23-13, *DiPizio Construction Co. v. Erie Canal Harbor Development Corp.*, No. 2013-803777 (Sup. Ct. Erie Cnty. November 26, 2013). And, finally, (5) A suit against LiRo, alleging that it interfered with the construction agreement and acted in bad faith in managing the Project. Dkt. No. 23-14, Complaint in *DiPizio Construction Co. v. The LiRo Grp.*, No. 2013-801829 (Sup. Ct. Erie Cnty. September 10, 2013).

In addition, Travelers filed suit against DiPizio Construction and its indemnitors in the United States District Court for the Western District of New York, seeking reimbursement for the losses it suffered in connection with the performance bond. *Id.* at ¶ 301; Dkt. No. 30-1, Complaint in *Travelers Casualty and Surety Co. v. DiPizio Construction Co., et al.*, No. 14-cv-576A (W.D.N.Y. July 16, 2015). Ms. DiPizio was also later added as a defendant. *Id.* at ¶ 316; Dkt. 30-8, Second Amended Complaint. In DiPizio Construction's answer and counterclaims, it brings counterclaims based on Travelers's: interference with the construction agreement; refusal to issue new surety bonds to DiPizio Construction; refusal to appoint DiPizio Construction as completion contractor; and refusal to decline Erie Canal's claim on the performance bond. Dkt. No. 30-4, Answer and Counterclaims. On July 30, 2015, Magistrate Judge Schroeder issued a Report, Recommendation and Order that Travelers be granted partial summary judgment and be indemnified for reasonable, good faith payments made in connection with the Inner Harbor Project, the amount to be determined by inquest at a later date. Dkt. No. 30-9, Report, Recommendation and Order at 17.

Ms. DiPizio filed the present suit on July 9, 2015, and the complaint was amended on September 22, 2015 to add Dreamco as a plaintiff. The amended complaint alleges claims for RICO conspiracy under 18 U.S.C. § 1962(c–d) and civil rights violations under 42 U.S.C. § 1983 against all defendants but Travelers, as well as various state law claims for fraud and tort against all defendants. The claims against Travelers do not allege that it was a conspirator, but rather allege that plaintiffs

were harmed by its "failure to conduct an investigation; protect the interests of its insured; capitulate to Pike's appointment as Completion Contractor; and terminate [DiPizio Construction's] bonding capacity . . . ." Am. Compl. at ¶¶ 370, 384, 391. Prior to an initial pretrial conference and the issuance of a case management plan setting a discovery schedule, defendants requested leave to file a motion to transfer venue pursuant to § 1404(a). *See* Dkt. Nos. 14–15. The Court granted the request, and defendants filed the present motion on August 28, 2015.

### III. LEGAL STANDARD

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). "Thus, § 1404(a) proposes a two-part test. First, the transferee district must be one where jurisdiction over the defendant could have been obtained at the time suit was brought, regardless of defendant's consent. Second, the transfer must be in the interest of justice and convenience of the parties and witnesses." *In re CenturyLink, Inc. Sec. Litig.*, No. 13 CIV. 03839 LTS, 2014 WL 1089116, at *1 (S.D.N.Y. Mar. 18, 2014) (internal quotation marks and ellipses omitted) (quoting *Whitehaus Collection v. Barclay Products, Ltd.,* No. 11 Civ. 217, 2011 WL 4036097 (S.D.N.Y. Aug. 29, 2011)).

The parties do not dispute that plaintiffs' claims could have been brought in the Western District of New York. Having satisfied that threshold inquiry, the Court must evaluate the following factors to determine whether to grant a motion to transfer venue:

> (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice.

7

*Steck v. Santander Consumer USA Holdings Inc.*, No. 14-CV-6942 JPO, 2015 WL 3767445, at *2 (S.D.N.Y. June 17, 2015) (quoting *Ritchie Capital Mgmt., L.L.C. v. U.S. Bank Nat. Ass'n*, No. 14 CIV. 8513 PAE, 2015 WL 1611391, at *1 (S.D.N.Y. Apr. 10, 2015)).

The list of factors is not exhaustive, *see Pausch Med. GmbH v. Pausch LLC*, No. 14-CV-1945 PAC, 2015 WL 783365, at *1 (S.D.N.Y. Feb. 24, 2015), and "[t]here is no rigid formula for balancing these factors and no single one of them is determinative." *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000). Rather, "weighing the balance is essentially an equitable task left to the Court's discretion." *Id.* (internal quotation marks omitted). The Court, moreover, has "broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006).

"[T]he party requesting transfer carries the burden of making out a strong case for transfer," and district courts "have consistently applied the clear and convincing evidence standard in determining whether to exercise discretion to grant a transfer motion." *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010) (internal quotation marks and citation omitted).

IV.   ANALYSIS

    A.  The Convenience of the Witnesses

"Courts typically regard the convenience of witnesses as the most important factor in considering a § 1404(a) motion to transfer." *Jackson v. Avis Rent A Car Sys., LLC*, No. 14 CIV. 1658 LLS, 2015 WL 1004299, at *3 (S.D.N.Y. Mar. 6, 2015) (quoting *Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F.Supp.2d 282, 286 (S.D.N.Y. 2004)). In conducting this analysis, the Court "weighs more heavily the convenience of non-party witnesses than party witnesses." *McGraw-Hill Companies Inc. v. Jones*, No. 12-CV-7085 AJN, 2014 WL 988607, at *7 (S.D.N.Y. Mar. 12, 2014).

The party moving for transfer "must provide the Court with a detailed list of probable witnesses who will be inconvenienced if required to testify in the current forum." *Kiss My Face Corp. v. Bunting*, No. 02CIV2645 (RCC), 2003 WL 22244587, at *2 (S.D.N.Y. Sept. 30, 2003). The Court "does not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum"; but rather "must qualitatively evaluate the materiality of the testimony that the witnesses may provide." *Herbert*, 325 F. Supp. 2d at 286.

Defendants provided an initial list of eighteen "key witnesses" in their brief in support of the motion, consisting of the names of corporate entities of non-party subcontractors and consultants who participated in the Project. They did not include a description of the any witness's expected testimony. In their reply brief, however, defendants identify twenty-six individuals from the eighteen non-party entities, and include the subject matter of their expected testimony. The non-party witnesses expect to testify regarding: DiPizio Construction's performance on the Project, compliance with the construction agreement, and quality of workmanship; structural issues with concrete after installation; and various causes of delays relating to pipe installation, fabrication and installation of bridges, soil excavation, installation of electrical components, and granite procurement. Nineteen individuals from thirteen entities are located in the Western District of New York, but four individuals from four of these entities have indicated that the Southern District of New York would not be inconvenient. Accordingly, the Western District of New York is more convenient for fifteen witnesses from nine non-party entities. One witness is located in the Northern District of New York, which is closer in proximity and therefore more convenient to the Western District of New York. Two witnesses are located in the Eastern District of New York, and the Southern District of New York is more convenient. Four witnesses are located out of state in North Carolina, Massachusetts, and Rhode Island; the Southern District and Western District are equally inconvenient.

Plaintiffs identify a list of twelve "key witnesses." Of these, eight are current employees of defendants, and unsurprisingly, all eight are employees from the three defendants with principal places of business outside of the Western District of New York. Moreover, two of the remaining "key witnesses" are agents of a defendant. The two non-party witnesses are located in New York City, and the Southern District of New York is more convenient. Of the ten remaining "key witnesses" that are either employees of defendants or their agents, six are located in New York City, two are located in Philadelphia, and two are located in New Jersey; the Southern District is more convenient for these witnesses.

Plaintiffs attack defendants' designation of a number of subcontractors as "key witnesses" because they were "limited to middling issues pertaining to the Project's delay and of no import to the unlawful conspiracy." Pls.' Mem. Opp'n at 15. But plaintiffs' allegations put the circumstances surrounding the Project's delays front and center in their complaint—alleging that defendants sought to shift blame on DiPizio Construction "for the extensive delays in completing Phase 3A of the Inner Harbor Project in Buffalo, New York, which were in fact actually caused by the incompetence of [defendants]." Am. Compl. at ¶ 1. Given that the cause of delays is a central issue, plaintiffs can hardly claim that witnesses testifying as to the cause of those delays is "of no import."

The number of non-party witnesses who would be inconvenienced by having to travel to the Southern District of New York greatly outweighs those inconvenienced by a transfer to the Western District. Although plaintiffs attempt to bolster the number of "key witnesses" who would find the Southern District more convenient by identifying employees and agents of defendants in close proximity, the Court does not weigh their inconvenience as heavily as that of non-party witnesses. *See Payless Shoesource, Inc. v. Avalon Funding Corp.,* 666 F. Supp. 2d 356, 364 (E.D.N.Y. 2009) (inconvenience of employees or agents of the parties does not weigh as heavily as inconvenience of non-party witnesses). The Court finds that this factor weighs heavily in favor of transfer.

### B. The Convenience of the Parties

"The convenience of the parties favors transfer when transfer would increase convenience to the moving party without generally increasing the inconvenience to the non-movant." *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 399 (S.D.N.Y. 2014).  Plaintiffs and seven of the ten defendants have their residences or principal places of business in the Western District of New York.  Of the remaining three defendants, their principal places of business are located in: the Southern District of New York, the Eastern District of New York, and Connecticut.  Two of these three defendants have offices in Buffalo that worked on the Project.  Moreover, all defendants have either joined the motion to transfer, or supported the motion by letter or sworn affidavit.  Because transfer "will result in no additional inconvenience to plaintiff[s], while at the same time making the forum substantially more convenient for defendants," this factor weighs strongly in favor of transfer.  *Spiciarich v. Mexican Radio Corp.*, No. 14-CV-9009 SHS, 2015 WL 4191532, at *8 (S.D.N.Y. July 10, 2015) (internal quotation marks and citation omitted).

### C. The Location of Relevant Documents And the Relative Ease of Access to Sources of Proof

Defendants contend that over one million documents have been produced in the related litigation in state court and the Western District of New York.  Although plaintiffs do not argue that any relevant documents or sources of proof are located close to the Southern District, they do correctly note that this factor is entitled to relatively little weight.  *McGraw-Hill Companies*, 2014 WL 988607, at *9 ("[T]his factor is entitled to relatively little weight in the modern era of 'faxing, scanning, and emailing documents.'") (quoting *Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007)).  Thus, this factor weighs only slightly in favor of transfer.

### D. The Locus of Operative Facts

"The location of operative facts is a primary factor in determining a § 1404(a) motion to transfer." *Rosen v. Ritz-Carlton Hotel Co. LLC*, No. 14-CV-1385 RJS, 2015 WL 64736, at *4 (S.D.N.Y. Jan. 5, 2015) (quoting *Whitehaus*, 2011 WL 4036097, at *2). Despite the construction project's location in Buffalo, plaintiffs argue that the transactions underlying the conspiracy occurred in the Southern District of New York. *See S.E.C. v. Lybrand,* 2000 WL 913894, at *6 (S.D.N.Y. July 6, 2000) (looking at where "transactions that constituted the core of the fraudulent scheme" were undertaken to determine locus of operative facts). Kenneth Adams, Empire State's President, maintains his office in the Southern District. Because Mr. Adams made the decision to terminate DiPizio Construction as general contractor, plaintiffs argue that this factor weighs against transfer.

The Court disagrees. The complaint clearly alleges that the Western District is the location of operative facts: it alleges a conspiracy "led by Thomas Dee" and carried out largely by Messrs. Dee, Hoyt, and Smith, all Erie residents; "rooted in the backrooms of Erie County's notorious culture of political insider dealing;" and involving a plot to replace DiPizio Construction (a company with its principal place of business in the Western District) with Pike (another company with its principal place of business in the Western District) as the general contractor for a large construction project in downtown Buffalo.

The core of the alleged conspiracy also occurred in the Western District. Although plaintiffs point to Mr. Adams's New York City office as the key location for transactions underlying the conspiracy, the complaint concedes that he had no knowledge of the conspiracy alleged. Indeed, plaintiffs make clear that Mr. Adams "did not know about the design errors and design delays caused by [Erie Canal's] design team," and "relied solely on Defendants Hoyt, Dee and Smith in the decision to terminate [DiPizio Construction] 'for cause.'" Am. Compl. at ¶ 210. Moreover, the complaint repeatedly alleges that Mr. Dee, not Mr. Adams, made the decision to terminate DiPizio Construction—stating that "Dee, on behalf of [Erie Canal], terminated for cause [DiPizio

12

Construction] as the Project's General Contractor," and asserting that "[h]e did so despite the fact that Erie's Board did not vote to do so." *Id.* at ¶¶ 251–52; *see also* at *Id.* at ¶¶ 211, 214–15.  Indeed, DiPizio Construction's state court action against Erie Canal, seeking a declaratory judgment that its termination was "nullity," is premised on the notion that Mr. Dee, *not* Mr. Smith, made the decision to terminate DiPizio Construction.  Dkt. No. 23-12, Complaint at 4 ("[T]he decision to serve the Notice of Intent on May 8, 2013 and ultimately, the decision to terminate [DiPizio Construction] . . . were *ultra vires* actions taken by Defendant's President, Mr. Dee, without the required approval of a majority of the Board.").  The Court finds that the location of operative facts is in the Western District of New York, and that this factor strongly favors transfer.

### E.  The Availability of Process to Compel the Attendance of Unwilling Witnesses

Neither party asserts that a witness would be unwilling to testify in either the Southern District or Western District.  "[I]f neither party asserts that a witness will be unwilling to testify voluntarily, the availability of process to compel testimony is irrelevant to the transfer analysis." *Rosen*, 2015 WL 64736, at *4.  Accordingly, this factor is neutral.

### F.  The Relative Means of the Parties

"Where disparity exists between the parties, such as an individual plaintiff suing a large corporation, the relative means of the parties may be considered." *Coast to Coast Fabrics, Inc. v. Exact Change Only Corp.*, No. 04 CIV. 7300 (DAB), 2006 WL 846716, at *5 (S.D.N.Y. Mar. 29, 2006) (quoting *Berman v. Informix Corp.,* 30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998)).  Neither party argues that this factor is applicable to the analysis.  The Court finds that this factor is neutral.

### G.  The Forum's Familiarity With the Governing Law

"Familiarity with the governing law as a factor in determining transfer of venue is generally given little weight in federal courts." *Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474, 479 (S.D.N.Y. 2006) (internal quotation marks and citation omitted).  Neither party argues that this

factor is applicable because both fora are equally familiar with the federal and state causes of action. The Court finds that this factor is neutral.

### H. The Weight Accorded the Plaintiffs' Choice of Forum

"A plaintiff's choice of forum is entitled to considerable weight and is generally not disturbed unless the balance of the factors strongly favors transfer." *McGraw-Hill*, 2014 WL 988607, at *7. Where "the forum selected is not plaintiff's home forum or the place where the operative facts of the action occurred," however, "this diminishes the weight assigned to this factor." *Id; see also Hix v. Morgan Stanley & Co. LLC*, No. 15CV217-LTS-JCF, 2015 WL 1726548, at *2 (S.D.N.Y. Apr. 15, 2015) ("[A] plaintiff's choice of forum is given less deference when it is not her home district."); *Simpson v. Rodas*, No. 10-CV-6670 CS, 2012 WL 4354832, at *10 (S.D.N.Y. Sept. 21, 2012) (importance of plaintiff's choice "measurably diminishes" where operative facts "have few meaningful connections" to plaintiff's chosen forum).

The Southern District is not plaintiffs' home district and the operative facts have only a limited connection to the Southern District of New York. Plaintiffs' choice of forum weighs against transfer, but the weight of this factor is diminished accordingly.

### I. Trial Efficiency and the Interests of Justice

Defendants argue that Travelers' action against DiPizio Construction and Ms. DiPizio in the Western District of New York favors transfer. Moreover, defendants note that the five state court actions filed in Erie County by DiPizio Construction are based on the same set of facts. "Courts consistently recognize that the existence of a related action in the transferee district is a strong factor to be weighed with regard to judicial economy; it can be decisive." *McGraw-Hill*, 2014 WL 988607, at *10 (quoting *Brown v. New York,* 947 F. Supp. 2d 317, 325–26 (E.D.N.Y. 2013)).

Plaintiffs primarily contend that the other actions are not "related" because none allege "an unlawful conspiracy by Defendants to wrongfully vilify Plaintiff[s] as the cause of the Project's delays." Pls.' Mem. Opp'n at 3–4. Although the causes of action alleged may be different, ["t]he

14

interests of justice require that the cases be related, not identical." *Columbia Pictures Indus., Inc. v. Fung*, 447 F. Supp. 2d 306, 309–10 (S.D.N.Y. 2006) (quoting *Manufacturers Hanover Trust Co. v. Palmer Corp.,* 798 F. Supp. 161, 167 (S.D.N.Y. 1992). Even a cursory comparison with the state court complaints reveals that the suits are undeniably "related." The same operative facts are at issue, many of the same parties are involved, and what lies at the heart of each of these cases is the same allegation made here—namely, that DiPizio Construction's termination was not warranted.

Moreover, DiPizio Construction has filed counterclaims against Travelers in the Western District, where Ms. DiPizio is also party, making similar claims as the present allegations against Travelers. In both cases, the claims against Travelers raise: (1) the propriety of Travelers's contacts with Erie Canal; (2) whether Travelers should have accepted Erie Canal's claim on the performance bond; (3) the propriety of Travelers's selection of completion contractor; and (4) Travelers's refusal to issue surety bonds. Transferring this case to the Western District will promote judicial economy by avoiding duplicative work, and allow one Court to resolve the similar factual and legal issues raised. This factor weighs strongly in favor of transfer

Plaintiffs also argue that the case is likely to proceed more rapidly in this Court than in the Western District, which they assert is "backed up" due to judicial vacancies. "While relative calendar conditions are a consideration in deciding section 1404(a) motions, they are never a factor to which great weight is assigned." *Artoptic Int'l Corp. v. Rio Optical Corp.*, No. 91 CIV. 1270 (JFK), 1992 WL 170674, at *2 (S.D.N.Y. July 8, 1992). Although plaintiffs claim that their argument is supported by statistics compiled by the Administrative Office of the United States Courts, they fail to actually cite any relevant statistics in their brief. Plaintiffs' failure to offer supporting evidence may be a basis to discount the weight assigned to this factor. *See Longo v. Wal-Mart Stores, Inc.*, 79 F. Supp. 2d 169, 173 (E.D.N.Y. 1999) ("[B]ecause the Defendant has offered no evidence showing the District of Arizona's current caseload, the Court finds that this factor should be given minimal weight in the overall analysis.").

In any event, the median disposition time for the Western District is not so much greater than the Southern District to support weighing this factor heavily in the Court's analysis. Viewing the Administrative Office's statistics for the twelve month period ending March 21, 2015, the median disposition time for a civil case was 8.9 months in the Southern District of New York and 11.4 months in the Western District of New York. *See* Admin. Office of the U.S. Courts, *U.S. District Courts—Combined Civil and Criminal Federal Court Management Statistics* (March 31, 2015), available at http://www.uscourts.gov/statistics-reports/caseload-statistics-data-tables. The Court finds that the 2.5 month difference in median disposition times weighs only marginally against transfer. *See In re Hanger Orthopedic Grp., Inc. Sec. Litig.*, 418 F. Supp. 2d 164, 171 (E.D.N.Y. 2006) (2.7 month difference in relative median disposition times weighs only marginally in favor of transfer); *De Jesus v. Nat'l R.R. Passenger Corp.*, 725 F. Supp. 207, 209 (S.D.N.Y. 1989) (requiring a large difference in docket conditions to substantially bear on transfer analysis).

V.     CONCLUSION

Weighing the factors set forth above, the Court in its discretion determines that defendants have met their burden of demonstrating by clear and convincing evidence that transfer is appropriate. Accordingly, it is HEREBY ORDERED that defendants' motion to transfer is GRANTED, and that this action shall be transferred to the Western District of New York. The Clerk of Court is directed to terminate the motions pending at Docket Numbers 22 and 28.

SO ORDERED.

Dated: October 5, 2015  
New York, New York

GREGORY H. WOODS  
United States District Judge